Good morning, may it please the court. I'm James Laughlin, and I represent the appellant David Cannon. With your permission, I'd like to reserve three minutes of my time for rebuttal. This case presents two statutory construction issues pertaining to part of the Lacey Act, section 337281, which, among other things, prohibits transporting wildlife in violation of a regulation of the United States. The first question is, what did Congress mean when it referred to a regulation of the United States? Ask any lawyer, law student, or lawmaker where to find the regulations in the United States, and they will inevitably point to the Federal Register and the Code of Federal Regulations. The Flax Law Dictionary confirms that this is a plain language meaning of that phrase. If you look up the words Federal Regulations in that dictionary, it will say C, Code of Federal Regulations. And this has been the plain meaning of that phrase since Congress enacted the Federal Register Act in the 30s, and the Administrative Procedures Act in the 40s. Congress, therefore, must have had this definition in mind in 1981 when it put the phrase regulation of the United States into section 337281. In fact, the 1979 version of Flax Law Dictionary, the version that was published just two years before the 1981 amendment, says plainly that, quote, United States government regulations appear first in the Federal Register, published five days a week, and are subsequently arranged by subject in the Code of Federal Regulations. When Congress uses such a term of art, the courts presume that they intended to incorporate the common meaning. The government, however, insists that regulation of the United States covers hunting rules issued by a military-based commander that are neither published in the Federal Register or the Code of Federal Regulations. In doing so, it sidesteps the key issue here. Congress's intent in enacting section 3372A1 as evidenced by the plain meaning of the words it chose. It diverts the court's attention to something that doesn't really matter. And I'm talking about Moat, Hall, and Cotier, the three cases from this court involving a statute that prohibits going on to a military base contrary to any law or lawful regulation. Despite what the government alleges, those cases are irrelevant for three reasons. First of all, none of them even address Congress's intent as to the word regulation in the trespassing statute, and it certainly didn't address the different phrase, regulation of the United States, and what that means in the Lacey Act. Second, unlike the solitary word regulation, the phrase regulation of the United States is a term of art which does refer solely to those things found in the Federal Register and the Code of Federal Regulations. Finally, the trespassing statute, unlike the Lacey Act, expressly applies to military bases, and therefore there's a reason when looking at that statute to interpret regulation to encompass military orders. For all these reasons, even if the court had resolved the question in the trespassing cases as to what the word regulation meant in the relevant statute, that holding would have no application to this case, which raises a very different question of what regulation of the United States means in the Lacey Act. So if Mr. Cannon had been charged with trespassing, you wouldn't have a viable argument? Yeah, possibly. All right. But he's not. He's charged under the Lacey Act. And because he's charged under the Lacey Act, the fact that he clearly knows that he's trespassing doesn't matter? No, I don't think it does, Your Honor, because I think that, and this is why the government's reliance on Hall, Moet, and Cotier is misplaced. What we're looking at is Congress's intent. And if Congress, when drafting this provision of the Lacey Act, says, here are the provisions, the regulations that we want to be a possible basis for a Lacey Act violation, that's the only thing that can establish liability under the Lacey Act. So if you go inside, there's a fence that clearly is meant to keep people out. And to get a hunting license in California, you have to know that you're not supposed to hunt on private property without the permission of the owner. And you shoot a coyote inside the fence on a military base, you still can do that with impunity because you didn't know the specific base regulations that made that conduct illegal? Well, Your Honor, I'm not going to speculate as to what you can do with impunity. I can say conclusively that I don't think he can be prosecuted under section 3372A1 for that conduct. Because I think Congress, despite using words that I think have a very clear, plain meaning, regulation of the United States, there's also a very good reason for them to have chosen those words. The reason that the Federal Register Act and then the Administrative Procedures Act were created was to put the regulations that people have to abide by at risk of civil or criminal penalties into a place where you know where to find them. And therefore, when it came time to draft the Lacey Act, it was reasonable for the Congress to say, well, those are the laws and regulations that can form the basis for such acts. It's significant that the government at trial never said where a civilian like Mr. Cannon could have even found the hunting regulations. I went on last night to the Edwards Air Force Base website, and even knowing what I was looking for, I couldn't find them. I don't think they're there. And it seems kind of odd to me that Congress would have intended such orders that are floating out there but not accessible in any kind of meaningful way to the average public to be a predicate basis for liability under this very serious statute. And so I think that that's a significant factor that supports the plain meaning interpretation that I'm advocating for. Okay. And I would like to mention, though, because Your Honor did discuss whether he had actual notice, and the government does say that there's no evidence that if the MOAT, actual notice rule, applies here, then he's obviously, Mr. Cannon's obviously guilty. I don't think that's the case. I think what the government does is confuse the concept of actual notice with the element it had to prove within the Lacey Act violation of with due care he should have known. And those are very different things, obviously. There's nothing in the record that suggests that Mr. Cannon actually knew that there were these hunting regulations that would have affected his conduct. So really what you're saying is he knows, or there's sufficient evidence in the record, that he knows that he shouldn't be shooting coyotes at Edwards Air Force Base, but he doesn't know, he doesn't have any notice of the regulations at Edwards Air Force Base that put that policy into effect. Well, I would say one step removed. I would say that the government points to the signs. The signs say, warning, you are not allowed to enter here absent permission from the military base commander. It says nothing about hunting rules. No, clearly it doesn't. So what I'm saying is, to put it in very crude, non-legal terms, he knows that what he's doing is wrong, but he doesn't know that he's violating the Lacey Act. Again, I wouldn't say that that's necessarily true. Again, keep in mind that if Mr. Cannon had shot the coyote on the other side of that fence... No problem. No problem. It's public land. He has a valid hunting license. Right. If in the heat of the moment the coyote went across the fence and he shot that animal, I don't think it's that kind of situation where it's obvious to someone in that position that, oh, I'm violating hunting rules on the other side of that fence. I acknowledge that if these same hunting rules had been published in the Code of Federal Regulations, then there's provisions saying it doesn't matter if you haven't read them, because that's the due process requirement that you have notice of these things. But that's absent here. There's no way he could have known the day he went out there, even if he wanted to figure out what the applicable rules were. He couldn't have gone on to Westlaw or on to his local library and easily found that out. And I think that's why Congress chose the words it did to limit Lacey Act liability to those things that are published, whether it's in the statutory books, the treaty books, or the Code of Federal Regulations. I'd like to talk very briefly about the standard of review. The government contends that this aspect of Mr. Cannon's insufficient evidence claim is reviewed for plain error, and that's incorrect. Mr. Cannon made motions for entry of judgment of acquittal, and that was sufficient to preserve his insufficient evidence argument. As this Court noted in the United States v. Polaris-Golan, it is claims that are deemed waived or forfeited, not arguments. And since he's clearly preserved that claim, he can bring this argument, and it is reviewed under the regular standard of review. However, as I pointed out in the briefs, even if the plain error standard did apply, the Court should still reverse this conviction, because it itself has noted that even in cases where there were no motions for judgment of acquittal brought whatsoever, it has expressed reluctance to affirm a conviction that is clearly not based on sufficient evidence. I say I have about five minutes left, so if I could request any other questions, I'll remain in my time. Thank you. Go ahead. Good morning, Your Honors. May it please the Court. Martin Estrada for the United States. Your Honors, following a jury trial, the defendant was convicted of a misdemeanor violation of the Lacey Act and sentenced to a year of probation. The defendant raises two arguments with regard to the conviction. I'll address the first one regarding whether regulation must be published within the Code of Federal Regulations. Now, within the language of the Lacey Act, there's no reference to the Code of Federal Regulations, no statement that the regulation must be published in the Code of Federal Regulations. Essentially, it's silent on the point. But this circuit has not been silent on that point. This circuit's law states that in order for regulation to be used against a defendant, it has to be published in the Code of Federal Regulations or the defendant has to have notice of that regulation. And the Court stated that very clearly in the Mowat case from 1978 and also in the Hall case. Now, the defendant argues that that standard doesn't apply here, that those cases do not apply here, because those cases have to do with trespass. However, if the Court looks at the language of those cases, they don't reference the trespass statute for the fact that notice is required. In fact, Mowat specifically references the Administrative Procedures Act as the basis for the fact that prosecution can go forward so long as there's notice. Counsel, let me ask you a question. Your argument here is that Mr. Cannon had notice because he knew as a hunter he wasn't supposed to hunt on private property, even though he didn't know the actual regulations and there were fences around the base and so forth. Let's say that there were a regulation that said you can't kill any coyote that weighs less than 50 pounds, and he shot a coyote that weighed 45 pounds. Are you in the same place? He's allowed to kill coyotes that are 50 pounds or more. That's my hypothetical. But you have a regulation that has a weight limit. Don't you have a due process problem there? There may be an issue in that situation. But here, Your Honor, what we have in terms of the evidence is of notice two main things. First, we have Edwards Air Force Base, which has many signs around it, barbed wire fence, posting, signs saying that entry is not permitted without permission. Secondly, and a crucial point here is that the defendant is an experienced hunter. He's a licensed California hunter. There is evidence presented at the trial that California hunters are instructed that where land is fenced and posted, they are to obtain permission before hunting there. And, in fact, the defendant testified at trial and made several admissions with regard to this point. I understand that, but let's just change the facts a little bit so that there would be certain circumstances under which killing an animal within the base would be legal in my hypothetical scenario. And where the line is between legality and illegality is defined in the regulations. In that situation, do you have the same argument that you're making now? Depending on the nature of the regulation, the nature of the language, that argument may not apply here. But here, the regulation was very simple. It was that no hunting was permitted on the base. It tracks the trespassing statute and what hunters learn. So the problem in my hypothetical doesn't exist because the same conduct is prohibited under a number of different theories. Is that where you're going? Well, the hypothetical seems to contemplate certain caveats, certain exceptions. Right. Whereas here, there's simply no hunting permitted without a permit. And that's exactly what Mr. Cannon and every other hunter is taught. So the regulation didn't say anything that Mr. Cannon didn't already know from other sources? Correct, Your Honor. And which Mr. Cannon admitted he knew. That he testified that he was aware that it would be unreasonable to shoot on an active military base without permission. He was aware that he shouldn't be hunting in a place that was fenced and posted. He admitted that he had knowledge of that. There's no requirement that a defendant have to know the specific citation of the regulation being violated. The cases are quite clear that it's the substance, the terms of the regulation that are important. In the cases of Hull, in the cases of Mowat, we have situations where there's no trespass permitted onto the base, no entry onto the base. There's no requirement that the defendant have to know a citation. There's no requirement that the defendant have to know the specific language of the regulation. It was the terms. It was the substance of the regulation. And that's exactly what the defendant knew here. I'd also like to address a point made regarding whether Mowat is applicable. I just want to finish up on that point. Mowat, in fact, relies on the Administrative Procedures Act and also cites the two other cases, the rights case, U.S. v. Ahrens, which have nothing to do with trespass. So the rule is one of general applicability. In addition, I'd like to address the argument that what we're dealing with here is a term of art. It is what? It's a term of art. Okay. Now, the phrase that is at issue here, regulation of the United States, actually is a bit broader. It's law, treaty, or regulation of the United States. There's nothing in the Lacey Act stating that this is a specific term of art, stating that regulation, as used in the Lacey Act, requires that there must be publication in the Code of Federal Regulations. And looking at the legislative history, which the defendant cites, it, in fact, supports the assertion that the Mowat rule applies, that notice without publication is sufficient. The Administrative Procedure Act and the Federal Registration Act were passed in the 1930s, 1940s, respectively. The amendment at issue here was passed in 1981. Presumably, Congress is aware of existing law. Congress would have been aware of the Federal Registration Act. Congress would have been aware of the Administrative Procedures Act. Yet it made no specific reference to the Code of Federal Regulations. Also importantly, at the time that this amendment was made in 1981, this Court's decision in Mowat had already been issued. The Mowat case is from 1978. Again, Congress is presumed to be aware of existing law. Mowat was passed in 1978, and it states that publication is not required so long as there's notice. And, in fact, we see in the Mowat case itself, it specifically states that Congress is aware of the law and specifically the law of the circuit. Mowat's defining the Administrative Procedures Act and interpreting the Administrative Procedure Act notes that the Administrative Procedure Act was amended in the 1960s to address a prior decision of the circuit. So we see that the legislative history, in fact, supports the fact that there's no requirement that there be publication in the Code of Federal Regulations. And also looking at the term of the statute itself, law, treaty, or regulation of the United States, the plain meaning of that term understood in the full context of the Lacey Act is what Congress was stating is that the regulation, the law, the treaty, was federal law, and Congress was differentiating federal law from state law because the Lacey Act prohibits the unlawful taking in violation of both federal law and state law. And the provision of issue here, we have law, treaty, or regulation of the United States. The next provision deals with takings and violations of the laws of states. So the plain meaning of the term, the most reasonable interpretation, is that of the United States does not refer to the Code of Federal Regulations, but rather refers to federal law as opposed to state law. I'd just like to address another argument that was raised, the second argument, with regard to transportation. The language of the Lacey Act states that transportation is defined as movement by any means. The defendant argues that there should be some commercial requirement imposed into that definition. Under the plain meaning, there's no commercial requirement, but the defendant argues that that could lead to absurd results. Now, here, the defendant transported the coyote by dragging it over 350 feet, over the length of a football field. Now, looking at the language of the Lacey Act, there's no statement, there's no requirement that we have any sort of commercial requirement. The Lacey Act, in fact, looking at the language, specifically references commercial activity with regard to the felony provision. Now, the defendant cites to legislative history, which certainly references the international market and wildlife and the larger commercial purposes at issue with passing the Lacey Act. And Congress addressed that commercial purpose in the felony provision. The felony provision of the Lacey Act prohibits violations of the Lacey Act that involve the sale or purchase of wildlife. And accordingly, Congress imposes stricter penalties for that, imposes felony liability. But at the same time as Congress imposed felony liability, Congress also imposed misdemeanor liability for more broad violations of the Lacey Act, violations that didn't involve a commercial purpose. And the juxtaposition is important here, because right before we have the misdemeanor provision, we have the felony provision, which specifically references commercial activity, and then we have the misdemeanor provision, which makes no mention of commercial activity. And, of course, Congress is presumed to know the words that it uses and to use the plain language in a manner that's reasonable. And the fact that it mentions commercial activity in imposing felony liability and at the same time expressly imposes no commercial requirement with regard to misdemeanor liability shows that Congress didn't intend for there to be some sort of commercial requirement. And the cases bear this out in terms of the purpose of the Lacey Act. This Court has stated that the Lacey Act is intended to protect the nation's wildlife. It's stated it has a broad purpose. This Court has upheld convictions involving Lacey Act violations that involve no commercial activity. And closely on point is the McKittrick case, in which an individual got... I think we pretty well understand your arguments on the commercial, not needing a commercial aspect of this. But it's the Lacey Act that makes it a crime to transport a coyote, if you would, or an animal, in violation of United States regulation. That's the law. You can't do that. Just to clarify, it's the taking that has to be in violation of the federal regulation, and then there has to be subsequent transport. The taking has to be... Okay. That's fine. Now, the regulation that we're talking about here is the order of the base commander. Is that correct? It's the Edwards Air Force Base Rules. Correct. That's the rule. That's the, quote, regulation of the United States, unquote, that you're talking about. Which is being prosecuted in this case. Correct. And it's not published in the Federal Register or anywhere else. It's just the base commander's rule. But you're saying that as long as Mr. Cannon has knowledge of that, that's all that's necessary. That's the rule announced by this Court in Mowat and Hall. And you're saying that's what should apply here in this case. Well, the Court has made clear that knowledge is proven by direct or circumstantial evidence. The government's position is that the evidence certainly proved, looking at the light, and the evidence in the light was reasonable to the government, that the defendant did have knowledge that he could not hunt on Edwards Air Force Base. But did he have knowledge of this regulation of the commander? With regard to the specific regulation? Yeah. The cases don't require, Your Honor, that the defendant have knowledge of the citation of the regulation or the exact language of the regulation. The cases require that the defendant have notice of the terms. And that's the specific. Well, he had notice he shouldn't be trespassing on the property. That's pretty clear. Correct. And related to that, because he certainly couldn't go on the property, he certainly couldn't shoot onto the property, he couldn't hunt on the property, and being an experienced hunter, being a hunter who'd taken the California Hunter Education course, he knew that because the land was fenced and posted that he needed permission to go onto the base. And he admitted that during trial. What about the, wasn't there an opening in the fence? There was an opening in the fence through which the defendant dragged the coyote, correct, Your Honor? There was evidence presented at trial that the entire fence was intact, except perhaps that opening. And there was evidence presented at trial by a warden of the California Fish and Game that hunters were taught that where a fence is intact, is substantially intact, then the area is posted and fenced in accordance with California law and permission is required. The mere fact that there might have been a hole in one small section of the fence didn't mean that the rule no longer applied to the defendant. If the Court has no further questions, Justice Kennedy. Do you think the commander would keep the fence intact? Well. Could they have perimeter surveillance of the fence? Well, Your Honor, part of the reason for the prosecution was the fact that there had been numerous instances of poaching in that area of Edwards Air Force Base. There was never any evidence regarding how the hole was created, but there was evidence that range riders, employees of the Edwards Air Force Base, routinely patrolled the area. And when they find any holes that are made by poachers or made by trespassers, they repair those. So we don't know how the hole was created, but when the range riders, when the employees find the hole, their job is to correct it and fix the hole, and that's what they do. Was there any evidence that the hole in the fence was recent? The evidence was that the barbed wire fence was not rusty, was not corroded, was in good shape. There's no reason to think that inclement weather would have caused the hole in the fence. There's no evidence of why the hole was created. Was it a fresh cut? There was no evidence regarding how fresh the cut was, but there was evidence that the barbed wire fence was not corroded, not rusty, and otherwise fully intact, and that the range riders, if they had found a hole, would correct it. So it's possible to interpret from that various interpretations, possibly that the defendant made the hole, possibly that some other poacher made the hole recently, but there was just no evidence of that. All right. Thank you. Thank you. First, I'd like to talk about, once again, about the Moab case, and this goes to one of the questions that Judge Thompson had. And I want to make clear how I think that the Court needs to look at this question. The first question is purely a question of statutory intent. Did Congress intend the phrase, regulation of the United States, in Section 3372A1, to mean solely those things published in the Federal Register and the Code of Federal Regulations, the plain meaning? If that's the case, the Court goes no further. Moab is irrelevant. It's only if the Court says, we don't agree with that, we agree that regulations outside the Code of Federal Regulations and Federal Register can qualify, then Moab becomes relevant because that says that unpublished rules can be the basis of liability if there's actual knowledge. But the critical thing is, if the Court accepts the plain meaning argument that I'm making, it doesn't even get to that because Moab is completely irrelevant. The next thing that I want to address is the government said that, you know, there's no need for Mr. Cannon to know the specific rules that he's violating when he goes, when he shot into the base. And that's not entirely true. The cases he points to, Moab and its progeny, are trespassing cases, and they talk about how the fact that there's a fence there, the fact that there's a sign there, anybody crossing knows that they're trespassing. It's not very hard to prove that person had actual knowledge. I have heard the government point to nothing that would create the impression that Mr. Cannon, who knew he could lawfully shoot a coyote on this side of the fence, knew that there was a hunting rule that's not published anywhere that says one of the things you can't shoot on the base is a coyote. But you can't hunt, period. You can't hunt, yeah. Bad joke, but that dog won't hunt. I mean, you know, that argument won't hunt. He knows from his hunting license that he's not supposed to be hunting. Well, I guess what Your Honor is going to is a different question. Keep in mind, they pointed to two different regulations. One says you can't hunt without a permit, and the other one says you can't hunt coyotes, among other things. And so maybe Your Honor's argument goes to an implied suggestion that he might know about coyotes. Well, if he can't hunt, then specifying particular animals is just a subset, isn't it? I mean, it's not a different general principle. Although I think it highlights the problem that once you start pointing to rules as the government does and says, oh, you should be aware of these, but where are they? They're not posted on the sign. I would be 100 percent with you if it said you can hunt ground squirrels and armadillos, but you can't hunt coyotes. I mean, I think if that's what we were talking about, it would be different. Well, I believe that the hunting rules that they point to do say there are certain animals you can hunt. Coyotes are not one of them. With or without permission from the base commander. Right, but that's a separate rule. But the scheme says you can't hunt at all without permission, and then with permission you can hunt certain animals, I think. You know, you really wouldn't think that it would be okay to fire a rifle into a military base. I'm not here to defend that act or the reasonableness of it. I am saying that I don't think that what actually happened is a violation of Section 3372A1. And the last point that I'd like to make in my last minute here is the government came up here today and said, well, you know, regulation of the United States, it's not a term of art. And that's a big shift for them, because in the rebrief, they pointed to Black's Law Dictionary and said, oh, see, you can look at the definition of regulation, and it encompasses all this stuff. And in the reply brief, we pointed out, you know, looking at other sections of Black's Law Dictionary, Black's actually supports our position. And so that's why they're backing off now, saying that, well, that really is a term of art. It is a term of art. Everyone knows what it means. If somebody wants to go see the regulations of the United States, they go to one place, and that's the Code of Federal Regulations and the Federal Register. Thank you very much. All right. Thank you. We're going to take a brief recess at this time. We're going to go back. This is where it ends, and then we'll go to recess.
judges: Pregerson, Thompson, Fogel